**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| GUY V. BUTLER,<br><br>Plaintiff,<br><br>v.<br><br>STEVEN A. HALL, *et al.*,<br><br>Defendants. | Civil Action No.: PX-25-1186 |

## MEMORANDUM OPINION

Self-represented Plaintiff Guy V. Butler, a former inmate, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that he was denied adequate medical care in violation of the Eighth and Fourteenth Amendments to the United States Constitution.[1] ECF No. 7. Defendants Steven A. Hall and Mary Ann Thompson ("County Defendants") move to dismiss or alternatively for summary judgment in their favor. Butler opposes. ECF Nos. 25 & 33. Defendants Bonnie Swanson, Erlande PierreSaint, Emily Cox, and PrimeCare Medical, Inc. ("PrimeCare Defendants") move for similar relief, which Butler also opposes. ECF Nos. 43 & 50. A hearing is unnecessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons discussed below, the motions are granted in part and denied in part.

### I. Background

The Court construes all facts in Butler's favor. Butler has a long history of complications arising from a total knee replacement. In 2022, Butler contracted a MRSA (methicillin resistant staph aureus) infection, endured months of pain and needed additional surgeries to eradicate the infection from the prosthetic knee. ECF No. 25-5 at 5; ECF No. 7 at ¶ 1-2. On November 14,

---

[1] Defendants Carolyn Scruggs, Ronald Weber, Burnice Mace, Janette Clark, Asresahegn Getachew, Dereje Tesfaye, and YesCare Inc. were previously dismissed without prejudice at Butler's request. ECF No. 51.

2022, while detained at Saint Mary's County Detention Center (SMCDC), Butler underwent a "total knee arthroplasty explanation and placement of antibiotic spacer" to treat his infection. ECF No. 7 at ¶ 5; ECF Nos. 25-3 & 25-5 at 5; ECF No. 43-10 at 20. At that time, doctors also placed a peripherally inserted central catheter ("PICC line") in Butler's right arm so he could receive regular antibiotic infusions to combat the infection. ECF No. 25-5 at 5.

On December 13, 2022, Butler was taken to the Frederick Health Hospital emergency room and admitted for a high fever and other signs of infection. ECF No. 25-5 at 5-6. Butler had recently been refusing antibiotics because he would experience headaches, chest pain and chills within 30 minutes after each infusion through the PICC line. *Id.* at 6. At the hospital, he tolerated the antibiotics well when administered intravenously. *Id.* Consequently, doctors removed and replaced the PICC line. ECF No. 25-6 at 2; ECF No. 43-10 at 13. The hospital discharged Butler with orders for at least two more weeks of antibiotics. ECF No. 25-5 at 12; ECF 43-10 at 18. The hospital also scheduled him for a follow-up irrigation and debridement of his knee with Dr. Janet Conway. ECF No. 25-5 at 6.

On December 30, 2022, Butler had a follow up appointment to check his PICC line. ECF No. 25-6 at 2. On the same day, Nurse Swanson at SMCDC observed that Butler's bandages had not been changed in four days and that he had a fever of 104. ECF No. 43-8 at 30. Swanson contacted the Frederick County Detention Center – where Butler had been housed immediately before and after his admission to Frederick Health Hospital – for guidance and supplies to care for Butler's PICC line. *Id.* Also on that day, Swanson arranged for Butler to be seen at the St. Mary's County Hospital emergency room. *Id.*

Butler returned to SMCDC later that day with supplies and antibiotics. *Id.* On January 9, 2023, Butler received follow-up care at the hospital for additional antibiotic treatment and was

diagnosed with a postoperative complication with drainage from his surgical wound and a persistent infection in his knee.[2] ECF No. 25-7 at 2; ECF No. 43-13 at 24. Butler received regular wound care between January and February 2023. *See* ECF No. 43-6 at 25-33; ECF No. 43-7; ECF No. 43-8 at 30-32; ECF No. 43-12 at 14-25; ECF No. 43-13 at 1-22.

Nonetheless, Butler had to have yet another surgery to remove the antibiotic knee spacer and insert a long fusion rod. ECF No. 25-8. The surgery was originally scheduled for late February 2023 for which he received a pre-surgical workup. ECF No. 25-8 at 2; ECF No. 43-10 at 1; ECF No. 43-13 at 23. But on February 24, 2023, the surgeon cancelled the procedure and immediately reset it for May 22, 2023. ECF No. 25-9 at 1; ECF No. 43-8 at 32; ECF No. 43-6 at 22.

Meanwhile, on May 3, 2023, Butler resolved his criminal case and was sentenced to several years in prison. ECF No. 25-4. Sixteen days later, and three days before the scheduled surgery, Butler was transferred to another detention center, Baltimore Central Booking & Intake Center ("BCBIC"), without warning. ECF No. 7 at ¶ 19; ECF No. 32-2 at ¶ 2, 5. BCBIC next immediately moved him to the Maryland Penitentiary Hospital ("MPH"). ECF No. 7 at ¶ 20.

On the same day as his transfer, Defendants completed transfer forms for the "receiving" institution. Nowhere do such forms reflect the gravity of Butler's battle with MRSA or his impending surgery. The Medical Transfer Notes prepared by Nurse Swanson, simply indicate that Butler requires "knee surgery" in the future, and separately that on May 22, 2023, he will receive a "specialty referral" with "Dr. Conway." ECF No. 25-10 at 2. The PrimeCare Defendants

[2] Butler also claims that his infection spread, risking amputation of his finger. ECF No. 7 at ¶ 45. PrimeCare Defendants respond that Butler injured himself. *See* ECF No. 43-6 at 19. In January 2023, Butler was placed on suicide watch because he had a rubber band, and later dental floss, tied around his finger for three days resulting in the discoloration and "misfunction of the tip of the finger." *Id.* at 21; ECF No. 43-8 at 30-31. He told a mental health provider that he was trying to get the tip to fall off because it had been "messed up" his whole life. ECF No. 43-12 at 3.

also left blank the section for information on "Significant Medical History" and for "physical disabilities/limitations." *Id.*

The County Defendants likewise, submitted an "inmate transfer alert," which makes no mention of the surgery set for three days hence. ECF No. 25-3. Although the form itself suggests some records were forwarded, the County Defendants included none of those records in support of their motion. Remarkably, the County Defendants also indicated on the form that Butler had no "special needs disabilities requiring accommodation" despite the significant physical limitations stemming from Butler's prior knee replacement, MRSA infections, the need for PICC line antibiotics, and a still-open knee wound that required regular treatment.

As a result of the transfer, Butler missed the May 22, 2023 surgery which could not be performed until August 17, 2023. According to Butler, he learned from his surgeon, Dr. Conway, that this three-month delay caused the MRSA infection to "eat[]the bone of his leg" such that the fusion rod could not be safely inserted. ECF No. 7 at ¶ 22. As a result, Butler needs a cane to walk short distances and must otherwise use a wheelchair. Butler describes that he suffers "excruciating pain" daily and depressive symptoms given that his "whole life has changed." *Id.* at ¶ 23.[3]

From this, the Amended Complaint avers that all Defendants delayed or denied Butler adequate medical care with deliberate indifference, in violation of the Eighth and Fourteenth Amendments, and companion medical negligence and state constitutional claims. ECF No. 7 at ¶¶ 53-65. For the following reasons, the Eighth Amendment claim survives challenge. But before reaching the merits, the Court first addresses the PrimeCare Defendants' motion to seal the entirety of their filings.

[3] Defendants do not include any records from the August 17, 2023, surgery or his post-operative care.

## II. Motion to Seal

The public enjoys a presumptive right of access to court records, which can be rebutted only by showing that "countervailing interests heavily outweigh the public interest in access." *Doe v. Pub. Citizen*, 749 F.3d 246, 265–66 (4th Cir. 2014) (quoting *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)). Accordingly, a party seeking to shield documents from public view must demonstrate the requested relief is "'necessitated by a compelling government interest'" such that denying public access is "'narrowly tailored to serve that interest.'" *Id.* at 266 (quoting *In re Washington Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986)). "Sensitive medical or personal identification information" qualifies for such protection, *Rock v. McHugh*, 819 F. Supp. 2d 456, 475 (D. Md. 2011). But here, Butler does not object to the medical records on the public docket, and he has placed his medical treatment at issue by filing suit. Moreover, many of the records PrimeCare asks to place under seal have already been filed on the public docket by the County Defendants. Because Defendants simply have not met their sealing burden, the motion is denied. Even so, Butler's personal identifying information ("PII") must be redacted from the medical records. Thus, the Court will direct the medical defendants to submit replacement copies of the medical records with redacted PII.

## III. Motions to Dismiss or for Summary Judgment

Defendants next move to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment to be granted in their favor under Rule 56. Such motions implicate the Court's discretion under Rule 12(d). *See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012). Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary

judgment under Rule 56." Fed. R. Civ. P. 12(d). The Court maintains "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Wells-Bey v. Kopp*, Civ. No. ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013) (quoting 5C Wright & Miller, *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

Defendants have submitted materials beyond the pleadings, putting Butler on notice that the Court may treat the motions as ones for summary judgment. Butler does not object to reaching the motions in that posture and submits his own evidence for consideration. ECF Nos. 32 & 32-1; ECF Nos. 50 & 50-1. Accordingly, the Court will treat the motions as ones seeking summary judgment. *See, e.g., Moret v. Harvey*, 381 F. Supp. 2d 458, 464 (D. Md. 2005).

Summary judgment is proper where no genuine dispute of material fact exists, thus entitling the movant to "judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). A dispute of

material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50.

With this standard in mind, the Court turns to the motions.

**A. Failure to Exhaust Administrative Remedies**

The County Defendants first contend that judgment in their favor follows because Butler failed to exhaust his administrative remedies prior to filing suit. ECF No. 25-1 at 13. Butler, for his part, attests that because he had been moved to BCBIC, and he did not know he could file a grievance against SMCDC from another facility. ECF No. 32 at 1 & ECF No. 32-2 at 2.

Pursuant to the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e. Although exhaustion under § 1997e is not jurisdictional, a plaintiff must nonetheless exhaust before the Court hears the claim. *See Jones v. Bock*, 549 U.S. 199, 215-16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005). Because the Court may not consider an unexhausted claim, exhaustion prior to federal suit is mandatory. *Ross v. Blake*, 578 U.S. 632, 639 (2016). Therefore, a Court ordinarily may not excuse a failure to exhaust. *Id.* (*citing Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall' … normally creates an obligation impervious to judicial discretion")).

Exhaustion requires an inmate to complete "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). Importantly, however, the Court must ensure that "any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Moreover, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a); *see Ross*, 578 U.S. at 636. An administrative remedy is not "available" where the prisoner, "through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citing *Aquilar-Avellaved*a, 478 F.3d at 1225); *Kaba*, 458 F.3d at 684.

In *Ross v. Blake*, 578 U.S. 632, 643 (2016), the Supreme Court discussed three instances when an administrative remedy is considered "unavailable" to an inmate. First, "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, when the remedial scheme is "so opaque that it becomes, practically speaking, incapable of use." *Id*. at 643-44. And third, when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

SMCDC requires the detainee to request an Inmate Grievance Form from an officer to initiate formal grievance proceedings. ECF No. 25-12 at 1. The detainee must next submit the completed form to an officer who either resolves the grievance or refers it to the shift commander or supervisor. *Id.* If the grievance still is not resolved, it is forwarded to the operations captain. *Id.* at 2. And if the captain cannot resolve the issue, SMCDC organizes a grievance committee within 48 hours to "formally and finally settle the issue." *Id.* If a decision is made in favor of the inmate, the decision is noted in the Inmate Grievance Log. *Id.*

The gravamen of Butler's Amended Complaint challenges the alleged denial of medical care while he was detained at SMCDC, and separately the decision to transfer Butler out of SMCDC a mere three days before his critical knee surgery which effectively guaranteed lengthy delay in necessary care. ECF No. 7. Most favorably to Butler, therefore, he alleges ongoing violations stemming from SMCDC's dereliction up to and including the process it undertook to

transfer him on May 19, 2023. *Id.* Butler nonetheless expected to have the surgery on May 22; but by the time he realized the transfer eliminated all possibility of that, it was too late for him to engage in the SMCDC grievance process. ECF No. 32-2 at ¶ 2-3. Because genuine disputes of fact remain as to whether Butler had any meaningful access to an administrative procedure once he left SMCDC, the Court denies judgment on this basis.

### B. Delay or Denial of Medical Care

Defendants next contend that no evidence supports a delay or denial of medical care sufficient to sustain an Eighth or Fourteenth Amendment violation. ECF No. 25-1 at 16 & ECF No. 43-1 at 18. The Court assesses the sufficiency of Butler's claims while he was a pretrial detainee at SMCDC under the Fourteenth Amendment, and any claims arising after May 3, when he began the service of his prison sentence, under the Eighth Amendment. While the claims are similar, they are not identical, considering that the Eighth Amendment protects convicted persons from "cruel and unusual punishment," where the Fourteenth Amendment protects pretrial detainees from all punishment. *Edwards v. Gregory*, No. 3:25-CV-00485-HEH, 2026 WL 917466, at *5 (E.D. Va. Mar. 31, 2026) (citing *Short v. Hartman*, 87 F.4th 595, 606 (4th Cir. 2023)).

For an Eighth Amendment violation, some evidence must reflect that the defendants delayed or denied Butler's medical care for a serious medical need with deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 840 (1994). *See also Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999). "[T]he Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences." *Grayson*, 195 F.3d at 695-96; *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (describing the applicable

standard as an "exacting"). The deliberate indifference standard is met where objectively, the plaintiff was suffering from a serious medical need, and the prison staff was subjectively aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer*, 511 U.S. at 837. This "subjective recklessness" requires the plaintiff to prove a defendant's "knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

A pretrial detainee, however, must show only that the "challenged government action was not 'rationally related to a legitimate nonpunitive governmental purpose' or that is 'excessive in relation to that purpose.'" *Short*, 87 F.4th at 608-09 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015). The detainee need *not* demonstrate subjective or actual knowledge of a detainee's serious medical condition coupled with conscious disregard for the risk of harm. *Id.* Rather, the claim will succeed upon showing that the defendants' acts or omissions were "objectively unreasonable." *Id.* at 611 (quoting *Kingsley*, 576 U.S. at 397).

Turning first to Butler's Fourteenth Amendment claim, he contends that he had been denied constitutionally adequate care because he was housed in an unsanitary cell and his knee had not been sufficiently treated. No evidence reflects who maintained control over Butler's housing conditions, or that such conditions risked harm to him. More to the point, medical records reflect that at SMCDC, Butler received adequate and routine care for his knee for months. And when

Butler required emergency treatment, he received it. Thus, summary judgment is proper on the Fourteenth Amendment claims.

The Eighth Amendment claims compel a different result. The record viewed most favorably to Butler demonstrates that Defendants knew he desperately needed surgery to curb the longstanding MRSA infection. Further, Defendants knew that the surgery had been longed scheduled for May 22, 2023. And yet, Defendants collectively prepared for his transfer on May 19, 2023, a mere *three* days before the surgery, effectively guaranteeing its delay. Also absent is evidence of any real effort to afford Butler a timely surgery upon transfer. The transfer medical records, for example, do not describe the urgency or gravity of Butler's medical situation. The records do not state that Butler is scheduled for surgery on May 22, 2023, and instead make an oblique reference to a need for surgery sometime in the future. ECF No. 25-10 at 2. Without further factual exploration, the Court cannot conclude that no genuine issue of disputed fact exists precluding an Eighth Amendment claim premised on a deliberate delay or denial of the necessary surgery.

Moreover, neither set of Defendants aids their respective positions by essentially pointing the finger at the other. SMCDC's Warden, for example, swears that PrimeCare is solely responsible for fielding "all medical record requests," ECF No. 25-13 at ¶ 6, thus suggesting that any failures to alert the receiving facility of Butler's emergent medical needs are solely PrimeCare's doing. ECF No. 25-3. Yet the record reflects that SMCDC, too, sent a "transfer alert" that similarly obscured Butler's need to have the surgery on May 22. ECF No. 25-3. Thus, because the evidence reflects that both the County Defendants and PrimeCare Defendants knew of the impending surgery date that was necessary to treat his serious medical needs, but nonetheless

facilitated a transfer in a manner that hid the true seriousness of Butler's condition and all but guaranteed substantial delay, the Court will allow the Eighth Amendment claim to proceed.

The Court lastly turns to Butler's remaining claims. They are not clearly pleaded. To the extent he wishes to pursue a medical malpractice claim, *see, e.g.*, ECF No. 7 at ¶¶ 54, 57, he must first exhaust the claim with the Maryland Health Care Alternative Dispute Resolution Office. *See* Md. Code Ann., Cts. & Jud. Proc. § 3-2A-10. *See also Rowland v. Patterson*, 882 F.2d 97, 99 (4th Cir. 1989) (holding that this requirement applies to medical malpractice claims filed in state or federal court). Nothing suggests that Butler has done so. Thus, the malpractice related claims are dismissed without prejudice.

Butler also seems to advance companion state constitutional claims, although the Amended Complaint does not plead a clear liability theory. Those claims, too, shall be dismissed without prejudice.

That said, the Court will appoint counsel to represent Butler to assist him as discovery proceeds on the Eighth Amendment claim. Once counsel becomes familiar with the record and has an opportunity to confer with Butler, the Court will afford Butler the opportunity for counsel to move for leave to file a Second Amended Complaint to make plausible any related causes of action.

## IV. Conclusion

For the foregoing reasons, the Court grants judgment as to alleged Fourteenth Amendment violations for delay or denial of medical care prior to Butler's May 3, 2023 sentencing, and denies judgment as to the Eighth Amendment claim for acts or omissions occurring after sentencing that led to the delay of his May 2023 surgery. All remaining claims are dismissed without prejudice. Counsel will be appointed to represent Butler. Defendants shall answer the Amended Complaint

within 30 days as to the Eighth Amendment claim. Thereafter, the Court will issue a scheduling order pursuant to Federal Rule of Civil Procedure 16 which will include a deadline for amendment of pleadings.

A separate Order follows.

| | |
|---|---|
| 8/24/26 | /s/ |
| Date | Paula Xinis<br>United States District Judge |